And we will move on to Case No. 6, Thompson v. Brown.  Good morning, Your Honors, and may it please the Court. My name is Elizabeth Rowe, and I represent Petitioner-Appellant J. R. Thompson in this matter. This Court has certified Mr. Thompson's appeal on a single issue, where the rule that latches doctrine applies to a petitioner's delay in prosecuting an already pending post-conviction petition was firmly established and regularly followed in Indiana at the time when Mr. Thompson's state court petition was decided. So can you illuminate something for me? You mentioned in your reply brief, in particular, Indiana Trial Procedure Rule 41e, which is a way that a party can seek to have a case dismissed for failure to prosecute. At the time, as I'm remembering, back in 1992, when Mr. Thompson files this post-conviction conviction, does any notice go to the state at all that this has been filed? Does this go to the public defender to decide whether to do anything about it? What exactly happens? Your Honor, it's not exactly clear from the record. What we do have on the record is that Mr. Thompson filed this petition. We don't have indication of any sort of automatic notice, but we do have on the record that he filed this petition and that the state did choose to respond to it, albeit about 13 years later. Right, and so what I'm trying to do, maybe in the end it's not going to be relevant, but it does seem to me that Mr. Thompson, as an initial matter, has done what he's supposed to do. He files the petition. It's within a reasonable period of time after the direct appeals, and one of the questions that's relevant to Latches is to what extent is this delay attributable to him? To what extent should he have known that he needed to keep nagging somebody to do something, and to what extent did he rationally rely on whatever Indiana's normal procedures are for these cases? Yes, Your Honor, and I think that the state does make a point about a case law that discusses what period of delay was attributable to a petitioner, but I think what's relevant for this appeal is that all of these cases, despite sort of dicta about the attributability of any sort of delay to a petitioner, whether that was pre-filing or post-filing, all of these cases, starting with Douglas v. State and also applied by Edwards v. State and Sanders v. State, all of those cases held that the delay between filing and prosecution of a petition was not relevant for Latches' purposes. And so you're saying this was the landmark case for Indiana. You concede that going forward, if Indiana wants to have this rule, it's fine, but you can't apply it as a clearly established rule to Mr. Thompson, right? Yes, that's correct. Indiana could change their law and, you know, it's possible. If there is a firmly established and regularly followed rule in Indiana that this period of delay involved in this petition is relevant for Latches' purposes, that firmly established rule was firmly established by Mr. Thompson's case. It was the first case to hold. Well, but from a common sense standpoint, it's 22 years from the time of his conviction before anything is done, and we don't know whether when he filed the initial petition he served the state. And that's what Judge Wood asked. Well, that's why I was trying to find out what was his responsibility because we understand he was appointed several public defenders between 92 and 97, one finally withdraws saying that she's consulted with him. And so which part of this is on him and which part of it is that Indiana just doesn't happen to have rules for very prompt service is an interesting question, to say the least, in terms of all this. And, yes, Your Honor, I would say that, you know, in terms of what degree of this is on him, as you pointed out, the public defenders were appointed and withdrew, sort of a never-ending tale with that. However, But that was, let's see, that was between 92 and 97. Yes, Your Honor. In those times that those public defenders were appointed and withdrew, there was no response from the state, and to the point that you made, Your Honor, that, you know, it's a matter of common sense. Your Honor pointed out Indiana Trial Rule 41E. If the state did have a problem with this period of delay, and the argument is that this was, the argument the state would make is this is obvious, that this is too much delay, they very easily could have moved under Indiana Trial Rule 41E. Would you know when 41E was enacted? No, Your Honor, I apologize. That's all right. So I have a question. This is really, the state is assuming that it would be prejudiced if this case went forward, and I don't disagree with it if we assume that Mr. Thompson prevails on this petition. But I would be shocked, beyond all description, if Indiana places the burden of proof on the state in a post-conviction situation. I am sure that it's Mr. Thompson's burden to show that there is something wrong with what went on, and it seems like all sorts of people have died and evidence has disappeared. I find it actually incredible to think that Mr. Thompson could prevail in his own burden of proof to show flaws in a 1982 conviction for conspiracy to commit murder, well, for two counts of murder in the conspiracy to commit burglary. So it's a little mysterious to me. I mean, I have a slight feeling of artificiality about this case. I don't know. Yes. What do you think? Your Honor. How can he win with the burden of proof when there's no evidence? When there's no evidence and you have the burden of proof, you lose. Your Honor, there is, I believe, a double jeopardy claim that really wouldn't rely on sort of this past evidence. But as to the- In which case, the state wouldn't be prejudiced either on that point. Correct. Correct, Your Honor. But as to the rest of the claims, you know, Mr. Thompson isn't trying to prosecute the claims on this appeal. Mr. Thompson is just trying to get a court to hear the merits of his claims. And, you know, to the extent that the Indiana State Court feels that they'll be prejudiced, you know, this is a situation that is, you know, unfortunate with the preservation of evidence. But that doesn't mean that Mr. Thompson deserves to have his federal rights deprived in this circumstance. He still deserves, you know, as one would say, his day in court. And that's what he's looking for. In your reply brief, you say that the petitioner, Thompson, does not argue that the Indiana courts erred in finding unreasonable delay in his case. Mr. I'm sorry, unreasonable delay under current established Indiana precedent. I understand. So I want to set aside this whole is it adequately and, you know, established and regularly followed. But has he admitted that he is responsible in the state system, that he's responsible for this delay in part? Your Honor, no, he did. I believe that Mr. What Mr. Thompson did concede to in the state court was that the state has suffered prejudice. However, Mr. Thompson did not concede in the state court that he, you know, that there was unreasonable delay or that he was responsible for any sort of reasonable delay. Because in Mr. Thompson's. That it was his fault. In Mr. Thompson's position, this isn't unreasonable delay no matter which way you shake it. Because under established Indiana law at the time his petition was filed, this period of time wasn't relevant for determining delay at all. The reason I'm asking that is the Indiana appellate court said he, Thompson, has provided no argument as to why his 22-year delay in doing so was not unreasonable. And that, in my mind, it brings me right back to the question that Judge Wood is asking. What is he supposed to do? He filed a petition. He's in jail. Is there some obligation that he's under to then prosecute his petition? What is it? What's the source of it? Excuse me, Your Honor. I didn't mean to cut you off. I'm sorry. I believe that that sort of highlights the inequity of this situation. It's clear from Indiana trial rules that a failure to prosecute, you know, that triggers the ability to allow dismissal. But Indiana case law is not exactly clear on what this failure to prosecute is. And if you don't mind, Your Honors, I would like to save the remainder of my time for rebuttal. Okay. That's fine. Yes, Ms. Hine. May it please the Court. Judge Wood, I just wanted to take a moment and answer your question of opposing counsel about whether the state was notified. The record does not reflect whether the state was notified at the time he filed his petition. But the state public defender's office did enter an appearance in October of 1992 and withdrew in March of 1997. So I did want to clarify. So can you answer this for me then? I mean, that's helpful. It's a step along the way. And I'm by no means the expert that you probably are in Indiana court procedure. But is the normal course of things, as the Indiana trial rules are set up, as I would have imagined they would be, that the respondent would be notified when a post-conviction petition is filed? Yes, Your Honor. My understanding is that typically the state is notified. However, back in 1992, I think the procedure is different, and the record here does not reflect. Somebody has to initiate it. And if he doesn't initiate it, they may not get notified. That's correct, Your Honor. Or is it the court? I mean, obviously he's pro se. He's filed this petition. And, you know, you can ask, like in federal court, for the marshals to effect service. You know, with the pro se post-conviction people, sometimes there are special rules. And I'm frustrated not to have some sense of at least, if things had operated the way they were supposed to operate or that they ordinarily operate, what would have happened? So I guess you've given us one helpful data point, which is that the public defender files an appearance. But I guess the state docket. And then that, I guess we roll through several of them until 1997, when somebody gets out. Then things sit around for four years. And then he asks for a copy of the record. The state public defender says, we don't represent you. Then he tries to proceed pro se in 2005. I mean, there are gaps in time, but it's not clear which, you know, why the state couldn't long since have filed a petition to dismiss for failure to prosecute. You're not saying the state didn't know at some point along the way. No, Your Honor, that's not what I'm saying. Do we have anything in the record to show that at least by X date, the state of Indiana knew that this was pending? Yes, Your Honor. In 2005, when Thompson filed a motion to proceed by affidavit, he wanted to do the postconviction proceedings via affidavit, which is permissible under Indiana's postconviction rules. At that point, the state filed a response. And how did the state know that this case existed? The record does not reflect that information. So there's no reason to believe that he served that motion on the state either. That would probably be up to the court anyway, whether to let somebody proceed pro se. Yes, Your Honor. I did want to go back. So there's some, like, earlier time that we don't know about that the state found out that this case was pending. Yes, Your Honor. Based on the chronological case summary that we have from postconviction, that is accurate. I will make two points regarding that, though. One is at no point in time is Thompson filing anything saying, hey, I'm waiting on the state to do this. But why is that his burden? I mean, that's really my – when I think of lashes, first of all, I have a big problem with lashes under these circumstances with the lack of any Indiana precedent until his case that would have applied it this way. But if you get over that, then I'm not familiar with, you know, the duty to nag. You know, plaintiffs file cases, and then if the ball winds up in the defendant's court for a period of time, the plaintiff is in a big hurry. I mean, this happens. It happens in litigation all the time, and I don't know why plaintiffs have a duty to nag. Two points to that, and they're sort of intertwined, Your Honor. The first point is, is that the State Public Defender's Office did file that appearance in 1992, and presumably the State Public Defender's Office would have known how to file a notice, either a motion to compel or a notice with the court. Mandamus, a mandamus. I don't know if it would be a writ of mandamus. I have not seen that before, but it could be a motion to compel or it could be a mandamus. Compel what? Compel an answer? Yes, Your Honor. The other point that I would like to make is that sometimes in post-conviction cases, once the State PD's office enters an appearance, the state will actually wait for the State Public Defender's Office to file an amendment to the post-conviction petition, fully fleshing out the claims, and then at that point they will file an answer. But also I would like to make the point that this entire court. But the state must know then that something's going on. So they're sitting back and chilling and waiting for the amended complaint. I do believe that in certain circumstances, at least in my experience and what I've seen, the trial court can, the petitioner can request that the trial court serve the state, and I have seen that happen before, but that wasn't done here as far as we can tell. But the question of whether the state responded here, that goes to the correctness of the state court's application of latches. But you would agree, would you not? It doesn't necessarily. You didn't cite a single case. We'll get back to that first point then. You didn't cite any case where post-filing delay, before Mr. Thompson's case, of course, and I'm certainly willing to assume that if that's the rule Indiana wants to have, it's not relevant to this case, so we'll worry about that some other time. But you didn't cite anything. He had no reason to know back in 1992, or indeed up until this case was decided, that he risked losing everything by not nagging the court. And that goes back, Your Honor, to the state's position here, which is that latches is a general rule. No, but latches, but any rule that the Supreme Court warns us all the time about hitting the right level of specificity, I'll call it that, whether it's qualified immunity, whether it's other things. And so for Indiana to say, oh, there's this doctrine of latches up here, it depends how it's being applied. We wouldn't be here if this was a case where he didn't even file until 2005. If the Indiana courts had wanted to dismiss that, we would have said, that's up to them. Latches is about neglect, and it has been applied in a variety of contexts. The first case that I could find where latches was applied was in 1819. But how about to post-filing? You haven't neglected if you filed your lawsuit. That tolls the running of statutes of limitations. It tolls latches. Respectfully, Your Honor, I don't believe that there's support in Indiana cases that it tolls latches. There's no support to the contrary until Mr. Thompson's case. None. The application of latches to a post-conviction setting was firmly established. To post-filing post-conviction. Correct, Your Honor, but that goes back to the fact that if you look at latches, if you look at the equitable doctrine of latches, it is a general doctrine, and there's nothing in Indiana law that precludes its application in this context. So Indiana doesn't believe in giving people notice of what the rules are, because if he had known, if anybody had known, if the public defender had known, that neglect of the case after it was filed meant that all of his rights would be lost, it's reasonable to think something different would have happened. Well, two points, Your Honor. One is that we don't have any information until 2005 that Mr. Thompson didn't know, and even at that point the state did file a response. Why would you think he knew? He's a prisoner. But in Indiana, prisoners are held to the same standard as attorneys, and at the first, at the outset, he was represented by the state public defender's office, and a letter from 1997 where the state public defender's office seeks to withdraw says that they have sat down with Thompson. They have explained to him the procedural posture of the case. They have looked at it, and they have not found any meritorious issues. But also I would like to make the point that typically the United States Supreme Court has not found that this type of rule is inadequate. They want courts to adopt discretion. The four categories of cases that I was able to find where the U.S. Supreme Court has said, no, that's not, and also this court have said that that is not independent and adequate are either where it's based on federal law, federal law is intertwined with state law, so it's not independent. From an adequacy perspective, when there is state case law that directly contradicts, and that is a citation to Johnson v. Mississippi, directly contradicts, or when it is a new rule, which I believe is what Thompson is. And that's where I think we are here. I mean, the question before us is whether this is a brand new rule that Indiana made up in his case, free to follow going forward, but never done before. Well, I... And that's the difficulty that I have is that our whole dialogue this morning with you and with all, we can't figure out what was he supposed to do after he filed the petition, and doesn't that kind of prove their point? He could have. If he can't know what he's supposed to do, how does the rule serve as a basis for procedural default? Your Honor, I see that my time is about to expire. You should always answer a judge's question. A couple of points there. One is the fact that it's important to remember that in 1992, when he first filed his post-conviction petition, he was represented by the State Public Defender's Office, and also the letter shows that he knew. But also, even if we assume he didn't know until 2005 when he actually started moving this forward, the state asserted latches at that point. He was aware that latches existed. He was aware that he needed to move this litigation forward. If you use fair to prosecute as opposed to latches, it's the same thing, right? Yes, Your Honor. If he didn't prosecute, is it an appeal? Yes, Your Honor, and here, actually, the application of latches, the state's assertion of the affirmative defense of latches required the state to show prejudice, which is not required under a Trial Rule 41e motion. All right. For the foregoing reasons, the respondent respectfully requests that this court affirm the district court. Okay, thank you. Thank you. Anything further, Ms. Rowe? Your Honors, if there was a firmly established and regularly followed rule in Indiana at the time Mr. Thompson's state petitioned, it was that latches did not apply to post-filing delay. The best possible interpretation of the case law for the state on this issue is that it was unsettled, and furthermore, this was not a discretionary application of the latches doctrine. This court's precedent has made clear that an inconsistent, unexpected application, even of an established rule, is not sufficient to bar federal habeas review. This was the definition of unexpected. As Your Honors pointed out, Mr. Thompson's petition was the first time this rule was ever announced in any Indiana court, and for those reasons, Your Honors, we respectfully request that this court reverse the decision of the federal district court. Thank you. Thank you very much, and thank you as well for accepting our appointment in this case. We appreciate your efforts and those of your firm. Thanks as well, of course, to Ms. Hine. We will take the case under advisement.